IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRANDIN LEE DAVIS, and<br>JUSTIN SULLIVAN,<br>　　　　Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:20-cv-1247 |
| NATIONAL MERCHANT SERVICES<br>d/b/a THE BANKCARD GROUP; JOHN<br>MOTT, INDIVIDUALLY; and<br>JAYME B. MATHIS, INDIVIDUALLY,<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§ | |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME PLAINTIFFS BRANDIN LEE DAVIS, and JUSTIN SULLIVAN, (collectively referred to as "Plaintiffs"), by and through their undersigned attorneys of record, and file this, their original Complaint against DEFENDANTS NATIONAL MERCHANT SERVICES d/b/a THE BANKCARD GROUP; and JOHN MOTT, INDIVIDUALLY; and JAYME B. MATHIS, INDIVIDUALLY (collectively referred to as "Defendants"). For cause of action, Plaintiffs would show unto the Court the following:

## I.
## THE PARTIES

1. PLAINTIFF BRANDIN LEE DAVIS ("Davis") is a Texas resident living at 14495 Old Troy Road, Troy, Texas 76579, Bell County, Texas.

2. PLAINTIFF JUSTIN SULLIVAN ("Sullivan") is a Texas resident living at 723

Decathlon St., San Antonio, Texas 78245, Bexar County, Texas.

3. NATIONAL MERCHANT SERVICES, LLC ("Merchant") is a Texas domestic limited liability company duly incorporated under the laws of the State of Texas and, during the relevant time period, operated under the assumed name "The Bankcard Group." Merchant can be served with service of process upon its registered agent John Mott, 26306 Rockwall Parkway, New Braunfels, Texas 78132. Merchant is an "employer" within the meaning of 29 U.S.C. §203(d), an "enterprise" within the meaning of 29 U.S.C. §203(r), and has "engaged in commerce" within the meaning of 29 U.S.C. 203(s)(1).

4. Defendant, John Mott ("Mott") is a citizen of the United States and a Texas resident and can be served with process at 167 Rodalyn Drive, Boerne, Texas 78006. Mott owns Merchant, in whole or in part. At all relevant times hereto, Mott exercised supervisory authority over Plaintiffs and possessed the authority to act, directly or indirectly, in the interests of Merchant. As an owner, Mott possessed the authority to hire and fire employees, supervise and control employee work schedules, including wage and hour practices, determined the rate and method of payment to employees, and created and/or maintained employee personnel records. Mott exercised this authority over Plaintiffs. Mott is an "employer" within the meaning of 29 U.S.C. §203(d), an "enterprise" within the meaning of 29 U.S.C. §203(r), and has "engaged in commerce" within the meaning of 29 U.S.C. 203(s)(1).

5. Defendant, Jayme B. Mathis ("Mathis") is a citizen of the United States and a Texas resident and can be served with process at 109 Sky Harbor, Cibolo, Texas 78108. Mathis owns Merchant, in whole or in part. At all relevant times hereto, Mathis exercised supervisory authority over Plaintiffs and possessed the authority to act, directly or indirectly, in the interests

of Merchant. As an owner, Mathis possessed the authority to hire and fire employees, supervise and control employee work schedules, including wage and hour practices, determined the rate and method of payment to employees, and created and/or maintained employee personnel records. Mathis exercised this authority over Plaintiffs. Mathis is an "employer" within the meaning of 29 U.S.C. §203(d), an "enterprise" within the meaning of 29 U.S.C. §203(r), and has "engaged in commerce" within the meaning of 29 U.S.C. 203(s)(1).

6. At all relevant times hereto, Plaintiffs were employees of Defendants, as defined by and within the meaning of 29 U.S.C. § 203(e)(1).

7. At all relevant times hereto, Defendants were the employers of Plaintiffs, as defined by and within the meaning of 29 U.S.C. § 203(d).

8. Defendants employed Plaintiffs in commerce or in the production of goods for commerce.

9. Defendants' business or businesses were organized under unified operation or common control, employed at least two persons engaged in commerce or the production of goods for commerce, and had annual gross sales of at least $500,000.

10. Defendants jointly and severally employed Plaintiffs because they suffered or permitted Plaintiffs to work for them. Defendants shared related and overlapping employment of Plaintiffs. Alternatively, Defendants were the *alter ego* each of the other creating an economic dependence. Plaintiffs were, consequently, employees of both.

## II.
## JURISDICTION

11. Plaintiffs assert claims against Defendants pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), the Employee Retirement Income Security Act ("ERISA"), and the

Consolidated Omnibus Budget Reconciliation Act ("COBRA") thereby invoking the federal question jurisdiction conferred upon this Court pursuant to 28 U.S.C. § 1331.

## III.
## VENUE

12. Because the acts and omissions forming the basis of this suit occurred in Comal County, Texas, venue is appropriate in the San Antonio Division of the Western District of Texas.

## IV.
## STATEMENT OF FACTS

13. On or about October 8, 2009, Davis and Merchant entered into a written ISO agreement that granted Merchant strict control over Davis, such as a covenant preventing her from outside employment, a covenant preventing her from discussing or sharing any information outside of work, and control over the terms and conditions of compensation.

14. On or about April 21, 2011, Sullivan and Merchant entered into a written ISO agreement that granted Merchant strict control over Sullivan, such as a covenant preventing him from outside employment, a covenant preventing him from discussing or sharing any information outside of work, and control over the terms and conditions of compensation.

15. Plaintiffs' job duties and responsibilities included, but were not limited to, marketing and selling credit card and check processing services and/or equipment on behalf of Merchant to its customers or prospects, negotiating agreements with Merchant's customers, providing marketing services for Merchant, providing customer service, and attending work-related functions on behalf of Merchant.

16. Defendants regularly directed Plaintiffs to report for work at Defendants'

principal places of business and also granted them permission to work remotely from their homes on an "as needed" basis using remote electronic technology, including use of a virtual private network and remote desktop software. Defendants also require that Plaintiffs participate in Defendants training programs for which they were no separately compensated, and said training was in addition to their aforementioned job duties. At various times during their respective employment relationships, Defendants paid Plaintiffs as W-2 employees and as 1099 independent contractors.

17. Defendants, jointly and severally, retained the exclusive right to hire and fire them, the exclusive right to set the rules and regulations of work, the exclusive right to designate supervisors and other individuals to whom they were required to report, and the exclusive right to wrongly classify Plaintiffs as independent contractors and not as employees. Defendants, jointly and severally, maintained a common law employer-employee relationship with Plaintiff. Merchant exercised substantial control over Plaintiffs' job duties and responsibilities including, but limited to, defining the geographic areas in which Plaintiffs could work, defining the targeted customer base, limiting the authority that Plaintiffs could exercise over potential customers, imposing training requirements and service of customers, restricting the use of approved marketing materials, and imposing record-keeping responsibilities.

18. Defendants, jointly and severally, limited the initiative and discretion that they could exercise, directed that they work under the close supervision of supervisors, required that they command basic skills set to perform the essential functions of their job duties and responsibilities, furnished equipment such as computers, cell phones, directed that they work from home, continuously employed them, controlled the manner in which they paid them in

regular payroll, retained the exclusive authority to terminate them without notice or explanation, retained the exclusive authority to grant or deny their requests for leave or time off, and retained the exclusive authority to define whether their work was integral to their enterprise. As a matter of "economic reality," Defendants, jointly and severally, employed Plaintiffs as employees and not as independent contractors.

19. Because of the job duties and responsibilities Defendants imposed on Plaintiffs, they frequently worked numerous hours well in excess of forty (40) hours per week.

20. Despite the heavy workload and excessive overtime hours that Plaintiffs worked, Defendants did not keep or maintain any time records, time sheets, punch cards, or other documents verifying the hours Plaintiffs worked.

21. Defendants prohibited Plaintiffs from working for other employers, imposed strict confidentiality upon Plaintiffs regarding their employment terms and conditions, and imposed strict confidentiality on their work product.

22. Defendants treated Plaintiffs as a *de jure* independent contractors.

23. As a matter of economic reality, Defendants treated Plaintiffs as *de facto* employees entitled to the protections afforded by the FLSA, including overtime wage compensation.

24. Upon information and belief, Plaintiffs plead that Defendants maintained an array of benefits available to employees, as that term is defined by ERISA. These benefits included, but are not limited to, pension, retirement, profit-sharing, and medical and health insurance. When Plaintiffs signed their written ISO agreements, Defendants advised them that they were independent contractors and that they were ineligible for pension, retirement, profit-sharing, and

medical and health insurance benefits.  Relying on these misrepresentations to their detriment, Plaintiffs proceeded to work for Defendants under the false pretense that they were ineligible for these benefits.  Consequently, Plaintiffs did not seek or request enrollment in Defendants' pension, retirement, profit-sharing, and medical and health insurance plans.

25. By and through their Original Complaint, Plaintiffs plead that Defendants, and their employees, agents, and representatives, intentionally and willfully deprived them of the opportunity to participate in their pension, retirement, profit-sharing, and medical and health insurance plans under ERISA.  In the alternative, Plaintiffs plead that Defendants, through act or omission, deprived them of the opportunity to participate in their pension, retirement, profit-sharing, and medical and health insurance plans under ERISA.

26. By and through their Original Complaint, Plaintiffs plead that Defendants, and their employees, agents, and representatives, failed to provide them statutory written notice of their rights under COBRA.

## V.
## COUNT ONE - VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

27. The FLSA provides, *inter alia*, that all employees are entitled to a minimum wage for the first forty hours worked in a workweek.  The FLSA also provides that all employees are entitled to overtime pay, at a rate not less than one-half times the regular rate, for all hours worked in excess of forty hours in a workweek.

28. By and through their Original Complaint, Plaintiffs plead that, although Defendants ostensibly contracted with Plaintiffs as "independent contractors," they were, as a matter of economic reality, *bona fide* employees entitled to the full protections of the FLSA,

including overtime compensation for all hours worked more than forty in each workweek. More specifically, Plaintiffs contend that Defendants retained the final authority to hire and fire, that Defendants retained the final authority to supervise and control their work schedules, that Defendants retained the final authority to determine their rates and method of payments, and that Defendants maintained employment records.

29. By and through their Original Complaint, Plaintiffs contend that Defendants did not employ Plaintiffs in a *bona fide* executive, professional, or administrative capacity.

30. By and through their Original Complaint, Plaintiffs contend that they are not otherwise exempt from the FLSA.

31. By and through their Original Complaint, Plaintiffs contend that Defendants did not pay all regular wages due and owing to Plaintiffs, in violation of the FLSA.

32. By and through their Original Complaint, Plaintiffs contend that Defendants did not pay all overtime wages due and owing to Plaintiffs, in violation of the FLSA.

33. By and through their Original Complaint, Plaintiffs contend that Defendants failed to make, keep and preserve records documenting Plaintiffs' hours worked and wages due.

34. By and through their Original Complaint, Plaintiffs contend that Defendants' failure to pay Plaintiffs was a willful and intentional violation of the FLSA. More specifically, Plaintiffs contend that Defendants failed to act in good faith and did not reasonably believe that Plaintiffs were independent contractors or exempt employees. Plaintiffs further contend that Defendants are, jointly and severally, "repeat offenders" of the FLSA and have a demonstrated pattern and practice of depriving employees of regular and overtime benefits.

35. By and through their Original Complaint, Plaintiffs contend that Defendants'

willful and intentional violations constitute "continuing violations" of the FLSA, thereby extending the applicable statute of limitations from two to three years. Further, Plaintiffs invoke all statutory and judicial expansions of the applicable statute of limitations under Ledbetter v. Goodyear Tire & Rubber Co.

36. By and through their Original Complaint, Plaintiffs request that the Court assess liquidated damages in an amount equal to the regular and overtime wages due and owing by Defendants to Plaintiffs because they willfully and intentionally violated the FLSA and are "repeat offenders".

37. Plaintiffs were compelled to employ the undersigned attorneys to prosecute their claims to judgment. Accordingly, Plaintiffs seek to recover reasonable and necessary attorney's fees and taxable costs of court.

## VI.
## - COUNT TWO -
## VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

38. ERISA protects employees, such as Plaintiffs by, *inter alia*, establishing minimum standards for pension, retirement, profit-sharing, and health insurance plans administered by private employers, such as Defendants. Defendants were under the continuing and present obligation to notify Plaintiffs that they were eligible participants in Defendants' pension, retirement, profit-sharing, and health insurance plans, to provide Plaintiffs with relevant information about the features of such plans, and to assist Plaintiffs in enrolling in such plans so that they could recover such benefits.

39. Defendants employed Plaintiffs because they exercised their "right to control" Plaintiffs under the traditional and common law master-servant relationship. Defendants

exercised their right to control Plaintiffs by establishing the skills required, furnishing instrumentalities and tools to perform the work requested, defining the location where the work was to be performed, setting the duration of the employer-employee relationship, retaining the right to assign additional job duties and responsibilities, exercising control over the work day, defining the method and frequency of payment, retaining the power to hire and fire, and providing employee benefits.

40. By and through their Original Complaint, Plaintiffs contend that Defendants had actual and/or constructive knowledge that they intentionally misclassified Plaintiffs as "independent contractors" when, in fact, Plaintiffs were employees.  Further, Plaintiffs contend that Defendants failed to conduct a reasonably prudent or diligent investigation into their status as employees and, in doing so, failed or refused to extend all available ERISA eligibility and benefits to Plaintiffs.

41. By and through their Original Complaint, Plaintiffs contend that Defendants, and those presently unknown and unnamed fiduciaries who exercised discretionary control over the operation or administration of Defendants' ERISA plans breached their fiduciary duties to Plaintiffs.  More specifically, Defendants knowingly or recklessly made materially false, misleading and fraudulent statements and representations to Plaintiffs about their status as employees and their eligibility for all plan benefits offered by Defendants.  In making such materially false, misleading and fraudulent statements, Defendants breached their fiduciary duty to Plaintiffs, breached their duty of loyalty to Plaintiffs, and engaged in self-dealing by prioritizing their financial and economic interests above all.  As a direct and proximate result of Defendants' willful and intentional actions, Plaintiffs suffered significant financial losses and

harms.

42. By and through their Original Complaint, Plaintiffs contend that Defendants, and those presently unknown and unnamed non-fiduciaries such a plan advisors or other similarly situated third parties, assisted fiduciaries to breach their fiduciary duties to Plaintiffs. More specifically, Defendants breached their fiduciary duties to Plaintiffs, the Defendants had actual or constructive knowledge that the activity of the fiduciary was improper, and the Plaintiffs suffered significant financial losses and harms.

43. By and through their Original Complaint, Plaintiffs contend that Defendants, and those presently unknown and unnamed fiduciaries and non-fiduciaries such a plan advisors or other similarly situated third parties, interfered with Plaintiffs' attainment of rights provided under ERISA. More specifically, Defendants interfered with Plaintiffs' right to enroll and participate in Defendants' pension, retirement, profit-sharing, and health insurance plans and terminated Plaintiffs to prevent them from acquiring pension, retirement, profit-sharing, and health insurance plan benefits. As a direct and proximate result of Defendants' willful and intentional actions, Plaintiffs suffered significant financial losses and harms.

44. By and through their Original Complaint, Plaintiffs assert common law ERISA claims against all Defendants for restitution, indemnification and contribution, and estoppel in favor of Plaintiffs to enforce benefits.

45. Plaintiffs were compelled to employ the undersigned attorneys to prosecute their claims to judgment. Accordingly, Plaintiffs seek to recover reasonable and necessary attorney's fees and taxable costs of court.

## VII.
## - COUNT THREE -
## VIOLATIONS OF THE CONSOLIDATED
## OMNIBUS BUDGET RECONCILIATION ACT

46.     COBRA imposes obligations on employers to, *inter alia*, provide notice to plan administrators of all qualifying events affecting participants in group health plans, such as Plaintiffs.  As employees, Plaintiffs would have been qualified beneficiaries for COBRA continuation coverage.  Defendants were under the continuing and present obligation to notify their plan administrators that it had terminated Plaintiffs.

47.     By and through their Original Complaint, Plaintiffs plead that Defendants and their plan administrators failed to provide them notice of their COBRA rights upon termination of employment.  As such, Defendants and their plan administrators deprived Plaintiffs of their right to exercise any benefits available to them, such as the right to continuation coverage under the COBRA election period.

48.     By and through their Original Complaint, Plaintiffs plead that Defendants actions were willful and rose to the level of gross misconduct.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS BRANDIN LEE DAVIS, and JUSTIN SULLIVAN, pray that, upon final trial on the merits, they recover judgment against DEFENDANTS NATIONAL MERCHANT SERVICES d/b/a THE BANK CARD GROUP, JOHN MOTT, and JAYME B. MATHIS, said judgment entitling Plaintiffs to:

1.  Compensation for all damages suffered by Plaintiffs, including, but not limited to, unpaid regular and overtime wages, and other compensation to be determined upon inquest;

2.  Statutory remedies available under the FLSA, ERISA, and COBRA;

3.  Fringe benefits including, but not limited to, pension and retirement benefits,

stock options, savings plans, cafeteria plan benefits, profit-sharing benefits, and medical and life insurance benefits.

4. Equitable remedies including, but not limited to estoppel, restitution, the imposition of constructive trusts, disgorgement of ill-gotten gains, and all available injunctive relief;

5. Liquidated damages to be determined upon inquest;

6. Excise taxes and penalties provided under COBRA;

7. Punitive, exemplary and surcharge damages;

8. Reasonable and necessary attorney's fees;

9. Taxable costs of court;

10. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

11. All taxable costs of court expended in this lawsuit; and

12. Such other and further relief, either at law or equity, to which Plaintiffs may be justly entitled.

PLAINTIFFS HEREBY REQUEST TRIAL BY JURY.

    Respectfully submitted,

    SÁNCHEZ & WILSON, P.L.L.C.
    MARK ANTHONY SÁNCHEZ, ESQ.
    BRYAN MARK KORRI, ESQ.
    6243 IH 10 West, Suite 1025
    San Antonio, Texas 78201
    (210) 222-8899
    (210) 222-9526 (Telecopier)
    mas@sanchezwilson.com
    bmk@sanchezwilson.com
    ATTORNEYS FOR PLAINTIFFS

    By: /s/ Mark Anthony Sánchez
        MARK ANTHONY SÁNCHEZ, ESQ.
        TEXAS STATE BAR NO. 00795857
        BRYAN MARK KORRI, ESQ.
        TEXAS STATE BAR NO. 24067948

NOTICE OF ELECTRONIC FILING

    The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 21th day of October, 2020.

    /s/ Mark Anthony Sánchez
    MARK ANTHONY SANCHEZ, ESQ.

G:\My Files\1-Sanchez\Sullivan, Justin\National Merchant Services\Sullivan, et al.  v. National Merchant Services, et al\Complaint.doc

14