UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRANDIN LEE DAVIS, JUSTIN SULLIVAN, and ABBEY RICKER, § § § <br> Plaintiffs, § § <br> v. § <br> § <br> NATIONAL MERCHANT SERVICES, § <br> JOHN MOTT, and JAYME B. MATHIS, § § <br> Defendants. § | SA-20-CV-1247-HJB |

## ORDER

This Order concerns Defendants' Motion for Partial Summary Judgment. (Docket Entry 30.) The parties have consented to my jurisdiction. (*See* Docket Entries 4 and 5.) For the reasons set out below, Defendant's Motion for Partial Summary Judgment (Docket Entry 30) is **GRANTED IN PART, DENIED IN PART,** and **DENIED WITHOUT PREJUDICE IN PART.**

**I.   Jurisdiction.**

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331. (*See* Docket Entry 1, at 4.) I have authority to issue this order by consent of the parties pursuant to 28 U.S.C. § 636(c).

**II.   Background.**

Defendant National Merchant Services ("NMS") is a Texas limited liability company formed by Defendants Mott and Mathis to sell credit card processing services and equipment. (Docket Entry 30-3, at 1.) Plaintiff Sullivan was hired in October 2008. (Docket Entry 33-2, at 1.) In 2009, he signed an independent contractor agreement with NMS, and in 2012 he created his own limited liability company to facilitate sales. (Docket Entry 30-6.) In late 2019, NMS terminated the agreement between itself and Sullivan. (Docket Entry 30-3, at 2.) Plaintiff Davis

was hired by NMS on May 13, 2008, as a sales agent; Plaintiff Ricker was hired on August 17, 2015, as a clerical employee in NMS's Sales Support Department. (Docket Entry 33-3, at 1; Docket Entry 33-4, at 1.) Both were terminated in April 2019. (Docket Entry 30-3, at 2.)

Plaintiffs bring claims against Defendants for violations of the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). (Docket Entry 15, at 4.) Defendants moved for partial summary judgment on several sets of Plaintiffs' claims: (1) all claims brought against Defendants Mott and Mathis, (2) the FLSA, ERISA, and COBRA claims brought by Sullivan and Davis, and (3) Ricker's ERISA and COBRA claims.[1] (Docket Entry 30.) Plaintiffs responded (Docket Entry 33), and Defendants replied (Docket Entry 34).

## III. Legal Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings, but instead must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

1 NMS did not move for summary judgment as to Ricker's FLSA claims against it. (*Id.*)

2

with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). "Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' to create a genuine issue of material fact sufficient to survive summary judgment." *Barrera v. MTC, Inc.*, No. SA-10-CV-665-XR, 2012 WL 1202296, at *2 (W.D. Tex. Apr. 10, 2012) (quoting *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 860 (5th Cir. 2004)).

In addressing a motion for summary judgment, "[t]he court need consider only the cited materials," although it "may consider other materials in the record" in its discretion. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir. 1992). Rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the [record] evidence that creates an issue of fact." *Id.* In this case, Plaintiffs have attached evidence to their response to the motion for summary judgment, but they fail to provide citation to that evidence in the response itself. Nevertheless, in the interests of justice, the Court has reviewed all the evidence appended by the parties in support of the motion and response.

3

## IV. Analysis.

The Court first addresses the respective claims of Sullivan, Davis, and Ricker against Defendant NMS. It then turns to Plaintiffs' claims against Defendants Mathis and Mott.

### A.   *Plaintiff Sullivan's Claims Against NMS.*

Plaintiff Sullivan brings claims for violation of FLSA, ERISA, and COBRA. (Docket Entry 15, at 7–13.) The crux of each of these claims is whether Sullivan was an employee or an independent contractor: it is undisputed that, if Sullivan was not an employee under the statutes, he is not entitled to relief. It is likewise undisputed that the standard for who qualifies as an employee under the FLSA is broader than under ERISA and COBRA. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325–26 (1992). Therefore, if Sullivan does not qualify as an employee under the FLSA, he does not qualify under ERISA or COBRA.

To determine employee status under the FLSA, courts focus on whether the plaintiff was economically dependent upon the business to which he rendered his services. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043, 1054 (5th Cir. 1987). In other words, the central inquiry in determining employment status is whether the individual was, as a matter of economic reality, in business for himself. *Donovan v. Tehco*, 642 F.2d 141, 143 (5th Cir. Unit A, Apr.1981). To gauge the degree of the worker's dependency, courts consider the following non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Brock*, 814 F.2d at 1043. These factors are merely aids in determining the underlying question of dependency, and no single factor

4

is determinative. *Id.* at 1054. The ultimate determination of whether an individual is an employee within the meaning of the FLSA is a question of law. *Id.* at 1045.

With regard to two of the factors—the parties' relative investments and the permanence of their relationship—the Court does not believe the evidence presented on summary judgment supports either party. Regarding the relative investments, Sullivan claims that "[t]he competent summary judgment evidence demonstrates that Defendants wholly dominated the investment in their business. Plaintiffs invested absolutely nothing in Defendants' business enterprise." (Docket Entry 30, at 11.) None of the summary judgment exhibits supports these conclusory claims. Regarding the permanency of the relationship, what evidence there is cuts both ways: Defendants submit evidence that Sullivan was completing work on behalf of other companies (*see* Docket Entry 30-3, at 2), which tends to indicate non-employment status, *see Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993), but Sullivan worked on behalf of NMS for a decade, which supports an inference that the relationship was more than a temporary contract to fulfil a specific purpose, *cf. id.* (short-term relationships indicate non-employee status). Neither party has provided the Court with the contract between Sullivan and NMS; accordingly, the Court cannot verify the contents of such provisions, or determine whether they are more indicative of employer/employee or independent contractor relationship.

Setting these two factors aside, the remainder of the evidence shows that Sullivan was an independent contractor. With regard to the degree of control, Defendants submit evidence that, during the relevant time period, Sullivan was operating his own limited liability company, Merchant Direct Wholesale Processing, LLC. (Docket Entry 30-9, at 3.) As part of this operation, Sullivan communicated to Mott and Mathis that he intended to open an independent

5

office, where he would "take over everything, for the most part," including obtaining, training, and paying employees. (Docket Entry 30-7, at 6.) Sullivan intended for Defendants merely to continue certain services, including "key Check service, cash advance, gift cards," and he requested that Defendants continue to provide equipment for purchase, provide a residual report broken down by employee payroll, and be a point of contact between Sullivan and a third party. (*Id.*) Sullivan counters this evidence with his own affidavit, claiming that he "was required to follow Defendants' work rules, satisfy their training requirements, maintain financial records according to Defendants' specifications, and ensure the confidentiality of all transactions for the benefit of Defendants." (Docket Entry 33-2, at 2–3.) Additionally, Sullivan asserts that "Defendants controlled all aspects of payment and compensation." (*Id.* at 3.) He was also "required to use Defendant's equipment, software, and email systems during [his] employment. [He] received supervision and direction from Defendants' upper-level management, including John Mott and Jayme Mathis. [He] was required to use Defendants' contracts and agreements when retaining any merchant. [He] had very little discretion or control over the process. Defendants maintained control and supervision of all accounts." (*Id.*)

Even accepting Sullivan's evidence on these issues, it does not substantially take away from the degree of control his exercised. To the contrary, it appears from the record evidence that, while NMS provided administrative support, Sullivan had a great deal of latitude in the amount of time he worked, the locations from which he worked, the clients he solicited and the methods he used to perform his job. On balance, considering all the evidence presented by the parties as to who maintained control of Plaintiff Sullivan's work, this factor weighs in favor of Defendants.

The opportunity for profit and loss also weighs in favor of independent contractor status: NMS presents evidence that Sullivan's profits were in his own hands, as he "worked on a 100% commission basis and [was] eligible for bonuses and residual payments based on the number of merchants onboarded." (Docket Entry 30-3, at 3.) Sullivan responds that he was "solely dependent upon Defendants for accounts on which to work, . . . for approval of work performed, and . . . for compensation" (Docket Entry 33, at 11); however, he presents no evidence to support these claims.

Finally, Defendants show that Sullivan had to exercise significant initiative in his work: he was expected to generate his own customer leads, either by cold calling or going door-to-door to make sales. (Docket Entry 30-3, at 3.) This indicates a level of initiative necessary to generate business. *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (worker was able to exert initiative in the operation of his business by controlling his advertising, marketing, and sales methods). The initiative required is consonant with the 100%-commission structure and Sullivan's creation of his own business; together, these factors strongly support independent contractor status.[2]

In sum, even making inferences in favor of the non-movant, it appears that Sullivan was an independent contractor. He exerted a significant amount of control over his day-to-day activities, he had to demonstrate skill and initiative to perform his work, his profit or loss was in his own hands, and he started his own independent company to conduct his business. For all these

---

2 Sullivan claims that his position did not require significant skill or initiative of the kind that makes one an independent contractor, merely the "gift of gab." (Docket Entry 33, at 12.) It is true that the ability to develop and maintain rapport with customers is not the type of "initiative" contemplated by this factor. *Brock*, 814 F.2d at 1053. As demonstrated by the summary judgment evidence, however, Sullivan did more than merely maintain customer rapport.

7

reasons, summary judgment must be granted as to Sullivan's FLSA claim. As the standards for who qualifies as an employee under ERISA and COBRA are even more restrictive than under the FSLA, *see Nationwide Mut. Ins. Co.,* 503 U.S. at 325–26, Defendants are entitled to summary judgment as to all of Sullivan's claims.

### B. *Plaintiff Davis's Claims Against NMS.*

Plaintiff Davis also brings FLSA, ERISA, and COBRA claims. (Docket Entry 15, at 7–13.) The Court first addresses the FLSA claim, and then turns to the ERISA and COBRA claims.

#### 1. *Davis's FLSA Claim.*

Defendants concede that, for purposes of this suit, Davis was an employee of NMS. (Docket Entry 35, at 4.) They argue, however, that Davis was an exempt employee under the FSLA, *see* 29 U.S.C. §§ 207, 213, both under the "outside salesperson" exception and the "highly compensated employee" exception. (Docket Entry 30, at 10–11; Docket Entry 34, at 5–6.) Both of these arguments fail.

*The "Outside Salesperson" Exception.* The FLSA exempts workers "employed . . . in the capacity of outside salesman (as such term[is] defined and delimited from time to time by the regulations of the Secretary . . .)." 29 U.S.C. § 213(a)(1); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012). The Department of Labor defines the term "employee employed in the capacity of outside salesman" as any employee:

(1) Whose primary duty is (i) making sales within the meaning of section [203(k) of the FLSA], or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

8

29 C.F.R. § 541.500(a)(1)–(2) (2004). In turn, regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a) (2004). The regulations further provide:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* § 541.700(a).

In this case, Davis claims that her primary duty was not the solicitation of new customers, but the maintenance of services for existing customers. (Docket Entry 33-3, at 2.) She states that she "devoted about 15% - 20% of [her] time to actively engaging in actual sales work such as calling potential leads or trying to 'land' a new account. The rest of [her] time – about 80% to 85% of [her] week's time – was spent supporting, servicing, and promoting existing accounts, such as answering questions, providing customer support, providing data/information to the home office, and reviewing." (*Id.*) According to Department of Labor regulations, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). That the majority of Davis's time was spent providing support to existing clients and not acquiring new clients therefore tends to support a finding that her primary duty was not sales.

As to Davis's freedom from supervision, evidence indicates that her work was largely self-directed. (Docket Entry 30-3, at 2–3.) This weighs in favor of a finding that Davis's primary

9

duty was independent sales. There is no evidence in the record that describes Davis's salary relative to other, non-sales employees engaged in the same nonexempt work Davis performed, nor is there evidence as to the relative importance of the different tasks Davis performed, so consideration of these factors weighs in favor of neither party.

In FLSA cases, there are other "external indicia" of exempt outside salespeople, including working away from the office, with minimal supervision, and being rewarded with incentive compensation. *Christopher*, 567 U.S. 142, 165–66. Davis admitted that her job duties required her to travel to merchant locations on occasion. (Docket Entry 30-8, at 3.) Her testimony, however, reveals that she "devoted the bulk of [her] time, or about approximately 80% of [her] hours, to work from [her] home office." (Docket Entry 33-3, at 2.) That Davis worked from a home office does not support exempt status. For purposes of determining whether an employee is working away from the office, Department of Labor regulations consider "any fixed site, whether home or office, used by a salesperson as a headquarters [to be] the employer's places of business even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502 (2004). Therefore, while Davis does travel to merchant locations from time to time, the majority of her work is not conducted away from the office, supporting her position that she was not an outside salesperson. On the other hand, it appears that Davis's compensation was based on commission and residual payments, which is at least partially an incentive-based structure. (Docket Entry 30-3, at 3.) That some of Plaintiff's compensation was based on commission is some external indicia that she was an exempt outside salesperson.

Finally, the Court will note that, before her termination, it appears from the record that Davis's position title was "sales agent" (Docket Entry 30-3, at 3), which tends to indicate that

10

her primary duty was sales related. Job titles in and of themselves, however, are "insufficient to establish the exempt status of an employee." *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 686 (5th Cir. 2020).

Ultimately, in a dispute about an FLSA exemption, the employer has the burden of establishing that the exemption applies by a preponderance of the evidence. *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020). In this case, based on the factors weighing in favor of both parties, Defendants have not satisfied their burden to show, beyond any genuine dispute, that Davis's primary duty was sales. Therefore, they have not satisfied the outside salesperson exemption.

*The "Highly Compensated Employee" Exemption.* Defendants also assert that Davis was exempt from the FLSA overtime requirements as a highly compensated employee. (Docket Entry 34, at 5–6.) An employee falls under the "highly compensated" category if she (1) "receives total annual compensation of at least the annualized earnings amount of the 90th percentile of full-time nonhourly workers nationally;" and (2) "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601(a) (2016).

From December 1, 2016, to December 31, 2019, the relevant time period for Davis's claims, the annual compensation required for this exemption was $134,004. *Id.* at § 541.601(b). The evidence in the record indicates that Davis earned at least $100,000 in annual compensation in 2017 and 2018, but does not indicate that her compensation exceeded $134,000. (Docket Entry 30-8, at 3.) Defendants therefore have not satisfied their burden to show that Davis was a highly

11

compensated employee within the meaning of the FLSA. Defendants are not entitled to summary judgment on Plaintiff Davis's FLSA claim.

2. *Davis's ERISA and COBRA Claims.*

Defendants argue that Davis lacks standing to bring her ERISA claim. (Docket Entry 30, at 13–15.) As Davis's COBRA claim is derivative of her ERISA claim (Docket Entry 33, at 18), if she lacks standing as to the former, she likewise lacks standing as to the latter.

To assert a claim under ERISA, the plaintiff must be either a "participant" or a "beneficiary" of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1). Davis appears to assert her claim only as a "participant." (Docket Entry 15, at 9–11; Docket Entry 33, at 17–18.) A participant is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from" the ERISA plan. 29 U.S.C. § 1002(7). ERISA therefore imposes two requirements for relief: (1) that the plaintiff was or is an employee, and (2) that the plaintiff has a colorable claim of eligibility for benefits. *Id.*; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

As they did with regard to FLSA, Defendants concede that Davis was an "employee" for purposes of ERISA. (Docket Entry 30, at 14.) However, there is no specific evidence in the record which indicates that she would have been eligible for any of Defendants' benefits plans. The record includes no information as to whether Defendants offered any benefits plans and what the terms of those plans might have been. Without this information, the Court is unable to find that Davis might have a colorable claim for eligibility.

For her part, Davis focuses the entirety of her argument on whether she was an "employee" for purposes of ERISA. (Docket Entry 33, at 17–18.) As to the second prong of the analysis,

she asserts merely that, "as [an] employee[], [she] would have been eligible for benefits." (*Id.* at 18.) Such a conclusory allegation is insufficient: an employee is not automatically entitled to benefits simply by nature of employment. *See Firestone*, 489 U.S. at 116–17. Absent additional evidence, Davis has failed demonstrate a genuine dispute as to her ERISA eligibility, and Defendants are entitled to summary judgment as to Davis's ERISA claim. Defendants are accordingly also entitled to summary judgment as to her COBRA claim.

### C. *Plaintiff Ricker's Claims.*

Plaintiff Ricker also brings claims for violation of the FLSA, ERISA, and COBRA. (Docket Entry 15, at 7–13.) Defendants do not seek dismissal of her FLSA claims, but they do raise a limitations issue, seeking to limit the temporal scope of Ricker's claim based on the filing date of her suit in federal court.

Under the FLSA, the relevant statute of limitations is two years from the date the operative complaint is filed; in cases involving willful violation, the statute is three years. 29 U.S.C. § 255; *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). Ricker initially filed suit in state court on August 20, 2020, while Plaintiffs Sullivan and Davis filed suit in this Court on October 21, 2020. (Docket Entry 33, at 16; Docket Entry 1.) Ricker then joined this suit as a party on January 26, 2021. (Docket Entry 15.)

Ricker argues that, because of the doctrine of equitable estoppel, the relevant limitations period should be calculated using her state-court-complaint date of August 20, 2020. (Docket Entry 33, at 16.) The doctrine of equitable estoppel prevents an employer from "asserting the filing period [as a defense] if the employer misrepresented or concealed facts necessary to support the applicable claim." *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 665 (W.D. Tex.

13

2010). The record, however, is wholly devoid of any evidence that Defendants concealed or misrepresented information relevant to Ricker's claim.

Although equitable estoppel does not appear applicable, the Court nevertheless the must consider when Plaintiff's suit commenced for purposes of 29 U.S.C. § 225(a). In a removal case, the statute of limitations is tolled when the suit "commences" in any court of competent jurisdiction. *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2012 WL 12882858, at *2 (W.D. Tex. July 6, 2012). This case is not precisely a removal case; Ricker had a pending state-court case which she herself dismissed and then voluntarily refiled in this Court. (Docket Entry 33, at 16.) The exact proceedings in the state court are not laid out in the record, but it appears that Ricker's state-court case was abated in favor of another court that had dominant jurisdiction, though whether the court of dominant jurisdiction was this Court or another state court remains unclear. (Docket Entry 35-2.) These unique circumstances place this case somewhere between a removal case and a plaintiff opting into a class action lawsuit.

There are circumstances which make the situation akin to a removal: there was a pending state-court case, all the same defendants were involved and aware of the contents of the suit, the state-court suit was ended on motion of those defendants and not at the behest of the plaintiff, Ricker was added to this suit the day after her state-court claim was abated. (*See* Docket Entry 35-2.) On the other hand, unlike a removal, Ricker made the choice to dismiss her pending suit and join this entirely separate litigation, similar to an opt-in plaintiff. Given the limited evidence before it, and the failure of either party to provide guiding precedent as to these particular circumstances, the Court finds it appropriate to carry the limitations issue with trial, without prejudice to either party's ability to raise the issue at that time.

However, Ricker's ERISA and COBRA claims are another matter. The Court finds that, as with Davis, Ricker has not offered sufficient evidence to establish herself as a "participant." *See* Part IV.B.2, *supra*. Therefore, Defendants are entitled to summary judgment as to Ricker's ERISA and COBRA claims.

**D.     *Defendants Mott and Mathis.***

Finally, Defendants Mott and Mathis move for summary judgment as to all claims against them in their individual capacity because they were not "employers" of Plaintiffs. (Docket Entry 30, at 12–13.) As Plaintiffs present no contrary evidence on this issue, these Defendants are entitled to summary judgment.

To determine whether an individual or an entity qualifies as an employer for purposes of the FLSA, the Fifth Circuit utilizes the "economic reality" test. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012). The test is comprised of five factors, in which the Court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* In cases where there may be more than one employer, this court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Watson v. Graves*, 909 F.2d 1549, 1553, 1556 (5th Cir. 1990).

Plaintiffs do not address this argument at all in their briefing on summary judgment. The Court has reviewed the evidence in the record, which provides no insight as to whether Defendants Mott and Mathis were employers under the "economic realities" test. In these circumstances, Plaintiffs have failed to create a genuine issue of material fact as to whether Mott and Mathis were

15

employers for purposes of the FLSA, and so Defendants Mott and Mathis are entitled to summary judgment as to the claims against them.

V.     Conclusion.

Based on the foregoing, Defendants' Motion for Partial Summary Judgment (Docket Entry 30) is **GRANTED IN PART** and **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**. It is **GRANTED** as to (1) Plaintiff Sullivan's FLSA, ERISA, and COBRA claims, (2) Plaintiff Davis's ERISA, and COBRA claims, (3) Plaintiff Ricker's ERISA and COBRA claims, and (4) Plaintiffs Davis and Ricker's FLSA claims against Defendants Mott and Mathis. Defendants John Mott and Jayme B. Mathis are **DISMISSED** from this suit. The motion is **DENIED** as to Plaintiff Davis's FLSA claim against NMS, and it is **DENIED WITHOUT PREJUDICE** as to the limitations issue raised by Defendants.

**SIGNED** on February 23, 2022.

_____
Henry J. Bemporad
United States Magistrate Judge